JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
SAMUEL GO
Assistant Director
OZLEM B. BARNARD (NY 4350583)
ANNA L. DICHTER (NJ 304442019)
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-4469
Email: ozlem.b.barnard@usdoj.gov
Telephone: (202) 353-2405
Email: anna.l.dichter@usdoj.gov

*Attorneys for the Defendants-Respondents*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FOR IMMIGRANTS, | Case No.: CV 19-10424 AB (GJSx) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | Judge: Hon. Andre Birotte Jr. |
| | Date: January 31, 2020 |
| | Time: 10:00am |
| Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................... 1

STANDARD OF REVIEW ...................................................... 5

ARGUMENT .................................................................... 6

   I.  FFI cannot demonstrate a likelihood of Success on the Merits.................... 6

     A FFI Lacks Standing ................................................... 6

       1. FFI lacks organizational standing ...................................... 7

       2  FFI lacks associational standing........................................ 9

     B. FFI fails to state a claim because FFI has no First Amendment
       right to free and unmonitored communication with immigration
       detainees. ................................................................ 10

       1. FFI has no right to association ......................................... 12

       2. The removal of FOMDD's extension number from the
         pro bono platform does not require strict scrutiny ......................... 13

     C. FFI fails to state a First Amendment retaliation claim and
       cannot meet the factors of the retaliation claim test.............................. 14

   II. FFI Fails to Establish Irreparable Harm and Fails to
     Demonstrate That the Balance of Equities and the Public
     Interest Weigh in its Favor ................................................ 19

   III.The Court Should Not Grant a Nationwide Injunction .............................. 20

CONCLUSION .................................................................. 21

i

# TABLE OF AUTHORITIES

## CASES

*American Diabetes Association v. United States Department of the Army*,
   938 F.3d 1147 (9th Cir. 2019)..........................................................................9

*American Immigration Lawyers Ass'n v. Reno, ("AILA")*,
   18 F. Supp. 2d 38 (D.D.C. 1998) ...................................................................7, 8

*Arkansas Writers' Project, Inc. v. Ragland*,
   481 U.S. 221 (1987)........................................................................................13

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991)........................................................................19

*Bell v. Wolfish*,
   441 U.S. 520 (1979) .......................................................................... 11, 12, 20

*Bundy Am., LLC v. Hawkeye Transportation*,
   No. C09-817Z, 2009 WL 10676371 (W.D. Wash. Dec. 1, 2009) .....................19

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018)..........................................................................21

*Clemons v. Lombardi*,
   No. 4:13CV458 CDP, 2013 WL 3489870 (E.D. Mo. July 10, 2013)........... 10, 18

*Doherty v. Thornburgh*,
   943 F.2d 204 (2d Cir. 1991) ...........................................................................11

*East Bay Sanctuary Covenant v. Barr*,
   No. 19-16487, 2019 WL 3850928 (9th Cir. Aug. 16, 2019) ..............................21

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015).............................................................................6

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) .................................................................................7, 20

*Hartman v. Moore*,
   547 U.S. 250 (2006) ...................................................................... 15, 16, 17

*Healy v. James*,
   408 U.S. 169 (1972) ........................................................................................13

*Holloway v. Magness*,
   No. 5:07-CV-00088 JLH-BD, 2011 WL 204891 (E.D. Ark. Jan. 21, 2011)........10

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) ..........................................................................................9

*Hutchings v. Corum* ,
   501 F. Supp .1276 (W.D. Mo. 1980)...................................................................11

ii

*In re Primus,*
   436 U.S. 412 (1978) .................................................................................13

*Isomedia, Inc. v. Spectrum Direct, Inc.,*
   No. C08-1733JLR, 2009 WL 10676393 (W.D. Wash. July 1, 2009)..................19

*Johnson v. Galli,*
   596 F. Supp. 135 (D. Nev.1984) .................................................. 11, 12

*Karnoski v. Trump,*
   926 F.3d 1180 (9th Cir. 2019) ...................................................................6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
   624 F.3d 1083 (9th Cir. 2010) ...................................................................7

*Lopez v. Brewer,*
   680 F.3d 1068 (9th Cir. 2012) ...................................................................5

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..............................................................................6, 7

*Lydo Enters., Inc. v. City of Las Vegas,*
   745 F.2d 1211 (9th Cir. 1984) .................................................................19

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ................................................................................20

*Mathews v. Diaz,*
   426 U.S. 67 (1891) ..................................................................................11

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ..................................................................................5

*McGinnis v. County of Fresno,*
   No. CV-F-08-542, 2008 WL 4348000 (E.D. Cal. Sept. 22, 2008) ......................12

*Nw. Immigrant Rights Project v. Sessions,*
   No. C17-716 RAJ, 2017 WL 3189032 (W.D. Wash. July 27, 2017) .................13

*O'Brien v. Welty,*
   818 F.3d 920 (9th Cir. 2016) ...................................................................18

*Quebec v. Harris,*
   729 F.3d 937 (9th Cir. 2013) .....................................................................6

*Raines v. Byrd,*
   521 U.S. 811 (1997) ...................................................................................6

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,*
   502 U.S. 105 (1991) ................................................................................13

*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011) ................................................................................13

*Spence v. State of Wash.,*
   418 U.S. 405 (1974) ................................................................................15

iii

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................7

*Strandberg v. City of Helena*,
  791 F.2d 744 (9th Cir. 1986) ................................................................ 10, 12

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) .................................................................................20

*Turner v. Safley*,
  482 U.S. 78 (1987) .......................................................................................11

*United States v. Stevens*,
  559 U.S. 460 (2010) .....................................................................................15

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*,
  368 F. Supp. 2d 1121 (W.D. Wash. 2005) ...................................................19

*Walton v. N.Y. State Dep't of Corr. Servs.*,
  921 N.E.2d 145 (N.Y. 2009) ........................................................................10

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................................7, 8

*Watison v. Carter*,
  668 F.3d 1108 (9th Cir. 2012) ........................................................ 14, 15, 17

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ...........................................................................................6

**REGULATIONS**

8 C.F.R. § 1993.62(A)(1)................................................................................3

# INTRODUCTION

Plaintiff, Freedom For Immigrants ("FFI"), seeks a preliminary injunction that would restore nationwide toll-free access to an extension that connects detainees in the custody of U.S. Immigration and Customs Enforcement ("ICE") with FFI. At its core, this case is about an unapproved nonprofit organization that took over and continued to use a free and unmonitored pro bono extension number to facilitate phone calls with immigrant detainees. The Court should deny FFI's motion for a preliminary injunction because: (1) FFI lacks standing because the complained about extension number was not even FFI's number and there are other means to continue FFI's mission and activities; (2) FFI fails to state a claim because ICE's conduct does not implicate FFI's First Amendment rights, the restrictions imposed by ICE on toll-free extensions are appropriate, and FFI cannot show the necessary causation for ICE's alleged retaliatory conduct; (3) FFI fails to establish irreparable harm; and (4) the required balancing of the equities weighs in Defendants' favor where FFI sat on its rights before seeking this extraordinary injunctive relief, and where ICE has a strong interest in the regulation of phone access by ICE detainees.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since 2009, Talton Communications has served as the Detainee Telephone Service ("DTS") Contractor for ICE detention facilities. *See* Exhibit A, Declaration of Tae D. Johnson, ¶ 7. In accordance with ICE's Performance-Based National Detention Standards ("PBNDS") 2011 (Rev. 2016), Talton Communications created a national database containing free telephone access to certain organizations without monitoring or recording of the calls. *Id*. The pro bono system provided ICE Detainees with access to a variety of organizations without charge and without monitoring or recording including: EOIR, the local immigration court, the Board of Immigration Appeals (BIA), federal and state courts, Embassies and Consulates, Department of Homeland Security (DHS) Office of the Inspector General ("OIG")

hotline, ICE/OPR Joint Intake Center ("JIC"), ICE Detention Reporting and Information Line ("DRIL"), Office of Civil Rights and Liberties ("CRCL"), Community and Detainee Helpline ("CHD"), United Nations High Commissioner for Refugees (UNHCR), ICE EOR Custody Management Division ("CMD"), approved Non-Governmental Organizations ("NGOs"), and Legal service providers or organizations listed on the EOIR List of Pro Bono Legal Service Providers at https://www.justice.gov/eoir/list-pro-bono-legal-service-providers. *Id*. ¶ 8. Each Area of Responsibility ("AOR") had its own list, based on locality, of free numbers to call. *Id*. ¶ 9. However, because the pro bono system was nationwide, any of the numbers could be accessed by a detainee in any AOR, if the detainee remembered the extension. *Id*. ¶ 15.

In October 2013, Unitarian Universalist Congregation of Miami sought approval from ICE to use a number on the DTS pro bono platform due to its visitation program at Krome Service Processing Center in Miami-Dade County, Florida. *Id*. ¶ 13. In November 2013, ICE authorized DTS to add speed dial extension *9233 as the Unitarian Universalist Congregation of Miami extension number. *Id*. According to ICE records, in February 2014, Unitarian Universalist Congregation of Miami changed its name to Friends of Miami Dade Detainees ("FOMDD"). *Id*. FOMDD kept its extension number and operated on ICE's free and confidential pro bono platform based on its status as a nonprofit servicing Florida. *Id*.

Around the same time, Plaintiff, FFI, a community-based nonprofit organization based in California, created a hotline "for persons in immigration detention to report abuse, find resources, and bridge the divide between detained persons and their family and loved ones." ECF No. 1, Complaint ("Compl.") ¶¶ 1, 10.[1] According to ICE records, when ICE initially issued extension *9233 to FOMDD, FFI was not mentioned. Decl. Ex. A, ¶ 13. FFI somehow bypassed the

---

[1] Although Defendants rely on Plaintiff's version of the facts to construct the background, such reliance should not deem these facts admitted.

application process for pro bono access and began using FOMDD's extension number to connect to FFI's hotline.[2] *Id.* FFI misused FOMDD's extension number to confidentially communicate with detainees across the country at no cost. *Id.* Even though FOMDD received its extension number based on its application that limited its locality to Florida, "detained immigrants could reach FFI via [the] free and confidential phone call, throughout the day, wherever they were detained." Mot. at 16.

On October 1, 2015, EOIR amended its regulations governing the List of Pro Bono Legal Providers and revised the requirements for providers to be placed on the List. *See* List of Pro Bono Legal Service Providers for Individuals in Immigration Proceedings, 80 FR 59503-01 (Oct. 1, 2015) (codified at 8 C.F.R § 1003.61 *et seq.*). These amendments significantly revised the requirements to be placed on the pro bono list and required that each organization "provide a minimum of 50 hours per year of pro bono legal services to individuals at each immigration court location where the organization intends to be included on the List." 8 C.F.R. § 1993.62(a)(1). The application process for non-profit organizations, pro bono referral services, and attorneys in private practice is provided on the EOIR pro bono legal service providers website. https://www.justice.gov/eoir/list-pro-bono-legal-service-providers.

Many of the organizations with speed dial numbers on the DTS pro bono system platform, such as consulates and legal providers, operate only on a regional basis. Decl. Ex. A, ¶ 15. However, because the DTS pro bono platform was accessible by any detainee nationwide, the extension to any organization on the pro bono platform was accessible by any detainee nationwide. *Id.* As a result, detainees were able to call extensions for organizations outside of their geographic area. *Id.*

---

[2] FFI claims that it is "affiliated" with FOMDD. Mot. at 15. However, FFI does not explain its connection with FOMDD. Neither of the two organizations' websites indicate any sort of legal relationship. There appears to be no legal significance to FFI's alleged "affiliation" with FOMDD. *See* https://fomdd.org/; https://www.freedomforimmigrants.org/.

ICE learned that certain organizations on the DTS pro bono platform participated in three-way calling and call forwarding which was available to any detainee nationwide because of the structure of the DTS pro bono platform. *Id*.

ERO and ICE Office of Acquisition Management noticed that detainees were using extension numbers to call organizations outside of their AOR. *Id*. Some of these extension numbers, including FOMDD's, were facilitating three-way calls and call forwarding. *Id*. ¶ 19. Three-way calls and call forwarding presents a security risk because the calls were unmonitored. *Id*. ¶ 12. By allowing unmonitored calls, it is possible for a detainee to have a call transferred to someone that will assist the detainee in criminal activities, to aid in an escape, to intimidate witnesses, to embarrass or harass the detainee's victim, to order the delivery of contraband, or to continue a criminal enterprise. There are also benefits to a detainee of blocking third party calling because it may present a danger for detainees as they may get calls intimidating or defrauding them. *Id*.

Talton Communications conducted a system-wide update to limit access to pro bono extension numbers for organizations within a particular area and was able to restrict detainees' ability to make free phone calls from a facility in one AOR to a pro bono extension associated with another AOR. *Id*. ¶ 17. Accordingly, FOMDD's extension number was restricted to detention facilities in Florida. Mot. at 17. *Id*.

Then, in the summer of 2019, as part of an audit and in an effort to standardize the EOIR and ICE pro bono lists, Talton Communications' list of phone numbers for pro bono services was further restricted to eliminate all organizations that were not on the EOIR pro bono list. *Id*. ¶ 18. The EOIR list contains information on non-profit organizations and attorneys who have committed to providing at least 50 hours per year of pro bono legal services before the Immigration Court location. This provides for a standardized vetting process for the inclusion of pro bono attorneys and non-profit organizations providing legal services to ICE detainees

through the DTS pro bono system. *Id.* Non-profit legal organizations and attorney may follow instructions at the following DOJ link to be vetted and added to the EOIR list. http://www.justice.eoir/list-pro-bono-legal-service-providers. Once the pro bono legal entity is included on the EOIR list and ICE is notified by the applicant, the entity will be added to the DTS pro bono platform. *Id.* Because FOMDD was not listed on the Florida EOIR pro bono list, on August 7, 2019, FOMDD's extension number was removed. Decl. Ex A, ¶ 19; Mot. at 10. Removal of an organization from the DTS pro bono platform in no way precludes detainees from calling the organization's phone number directly outside of the pro bono network. Decl. Ex A, ¶ 23.

On December 10, 2019, FFI filed its Complaint in this action, alleging that Defendants: (1) violated the First Amendment by retaliating against FFI for engaging in protected speech; (2) violated the First Amendment by "shutting down FFI's hotline"; and (3), violated the First Amendment rights of the detained immigrants by shutting down FFI's hotline. Compl. ¶ 43-68.

FFI now moves the Court to issue an order to preliminarily (1) "enjoin and restrain ICE and its officers from further interference with the operation of the free and confidential extension operated by FFI as a hotline for immigrants in detention"; and (2) "restore FFI's free and confidential extension at all detention facilities operated, controlled, and/or overseen by ICE." Motion for Preliminary Injunction ("Mot."), Notice of Application. Defendants timely file this Opposition to Plaintiff's motion for Preliminary Injunction.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to

such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

To obtain a preliminary injunction, FFI, as the moving party, must demonstrate: (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Winter*, 555 U.S. at 20). The first factor, likelihood of success in merits, is a "threshold inquiry," and the court need not consider the remaining factors when a plaintiff fails to show likelihood of success in merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

**ARGUMENT**

**I.    FFI Cannot Demonstrate a Likelihood of Success on the Merits**

    **A.    FFI Lacks Standing**

FFI brings claims on behalf of itself and on behalf of detained immigrants. Compl. ¶¶ 43-68. But FFI is not likely to succeed on the merits where its action should be dismissed for lack of jurisdiction because FFI lacks standing. Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

FFI lacks standing and its claims should be dismissed. *See Lujan*, 504 U.S. at 560-61. To satisfy the "'irreducible constitutional minimum' of standing" under Article III, the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

6

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan*, 504 U.S. at 560). Speculative injuries do not confer Article III standing. *American Immigration Lawyers Ass'n v. Reno ("AILA")*, 18 F. Supp. 2d 38, 49 (D.D.C. 1998). Where, as here, an organization sues on its own behalf, it must establish standing in the same manner as an individual. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). An organizational plaintiff must show that the claimed harm is "both a diversion of its resources *and* a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (emphasis added). FFI lacks standing to bring any of its claims.

### 1.    FFI lacks organizational standing

FFI appears to be making a "vocational nexus" argument that any organization with an interest in telephone access to detained immigrants has standing to sue. *Lujan*, 504 U.S. at 566. However, absent an injury to FFI itself, this asserted basis for standing "is beyond all reason." *Id*. FFI lacks that injury here. According to ICE records, only FOMDD was granted free and unmonitored pro bono access based on its application and status as a nonprofit organization located in Miami, Florida. Decl. Ex A, ¶ 13. FFI, an entirely *different* nonprofit organization located in California, used FOMDD's extension number to access free and unmonitored calls. *Id*. Accordingly, FFI lacks any direct injury. *See Lujan*, 504 U.S. at 566. Even if FOMDD's extension number was reinstated, FFI's alleged injury would not be remedied because FFI has never been approved to use FOMDD's extension number. *See id*. at 562. Additionally, FFI fails to show a concrete injury caused by the removal of FOMDD's extension number because FFI remains able to communicate, through its own hotline number, with detained immigrants. Mot. at 19. Detainees may access FFI's hotline through prepaid telephone calls. Mot. at

18-19. Indeed, all FFI alleges is that "[w]ithout the hotline, detained immigrants *may* not be able to reach FFI at all." Mot. at 26 (emphasis added). This is too speculative an injury and asks the court to presume that detained immigrants, who are not part of this case, may suffer injury at some point in the future. *AILA*, 18 F. Supp. 2d at 49.

FFI cannot claim that it has standing based on an indirect injury either. "[W]hen a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights." *Warth*, 422 U.S. at 505. However, the indirectness of the injury will "make it *substantially* more difficult to meet the minimum requirement of Art. III." *Id.* (emphasis added). To establish standing as a third party with an alleged indirect injury, FFI would need "to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm." *Id.* FFI can establish neither. First, because the extension at issue did not belong to FFI, there is no injury that is a consequence of Defendants' actions. Second, even if the Court granted FFI the relief it is seeking, namely reinstating the extension, the relief would not remedy the alleged harm.

Furthermore, FFI fails to show that the removal of FOMDD's extension number from the pro bono platform frustrated FFI's mission and diverted its resources. Because FFI was *never* granted the *9233 extension number, the organization cannot show that its own mission was frustrated or resources improperly diverted. FFI's argument that the removal of FOMDD's extension number frustrated its mission and diverted its resources further fails because FFI does not show, beyond mere conclusions, that it has done anything more than "business as usual." *American Diabetes Association v. United States Department of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). FFI summarily alleges that the

removal of FOMDD's extension number diverted financial and personnel resources. Mot. at 18-19. However, FFI's claim that after FOMDD's extension number was removed, its hotline manager had to set up and maintain paid phone accounts at detention facilities to connect with detained immigrants is not enough to show a diversion of resources. *Id*; *see American Diabetes Association*, 938 F.3d at 1154 (where staff handling a phone call was not enough to show a diversion of any resources because the staff "was merely going about its business as usual."). Moreover, FFI fails to show even an approximation of how many detained individuals have been given a prepaid phone account. *See* Mot. at 18-19. It is therefore impossible to determine how much resources, if any, FFI has diverted. For all of the reasons stated above, FFI has failed to establish Article III standing via a direct injury for its First Amendment claims.

### 2. FFI lacks associational standing

Finally, to the extent that FFI aims to bring a claim on behalf of detained immigrants in its Motion, FFI fails to establish associational standing. The requirements of associational standing are well established. To sue on behalf of its members, Plaintiff must demonstrate: 1) that it "seeks to protect [interests that] are germane to the organization's purpose"; 2) that its "members would otherwise have standing to sue in their own right"; and 3) that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Here, FFI is not even the association approved for the pro bono extension number. Decl. Ex A, ¶ 13. FFI fails to identify any members and identifies no detainees whose rights have actually been violated. *See* Mot. at 18-19, 26, 27 (Defendants are still able to call the hotline directly and reach FFI). Neither FOMDD nor FFI represent detained immigrants and neither organization can show that detained immigrants need not participate to assert a claim in this court regarding their alleged

violation of their telephone access. Thus, FFI fails to establish associational standing for its First Amendment claim on behalf of detained immigrants.

Consequently, FFI lacks standing. To rule otherwise would be to reward the gross misuse of the pro bono platform.

**B.      FFI fails to state a claim because FFI has no First Amendment right to free and unmonitored communication with immigration detainees.**

FFI alleges that Defendants removal of its extension number from the pro bono platform "runs afoul of the First Amendment because it restricts, or at a minimum, significantly burdens FFI and detained immigrants': (1) protected speech based on content and viewpoint; (2) right to receive speech; and (3) right to associate." Mot. at 26.

Courts have generally held that even citizens do not have a First Amendment right to (1) free; (2) unmonitored; or (3) unrestricted phone calls in detention facilities. *See Holloway v. Magness*, No. 5:07-CV-00088 JLH-BD, 2011 WL 204891, at *10 (E.D. Ark. Jan. 21, 2011), aff'd 666 F.3d 1076 (8th Cir. 2012) (quoting *Walton v. N.Y. State Dep't of Corr. Servs.,* 921 N.E.2d 145, 156 (N.Y. 2009)) ("[a]lthough the Court does not doubt that [Plaintiffs] would engage in more of the real-time, verbal communication afforded by telephone technology if prices were lower, the hardship they allege 'is not a constitutionally significant curtailment of the free speech and association guarantee, particularly given the limited nature of that right in [detention] settings.'"); *Clemons v. Lombardi*, No. 4:13CV458 CDP, 2013 WL 3489870, at *3 (E.D. Mo. July 10, 2013) (finding that a detention facility's monitoring and recording of phone calls does not violate any First Amendment rights); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986) (finding that detainees certainly do not have an unlimited right to telephone access.). "In exercising its broad power over immigration and naturalization," Congress regularly places greater restrictions on immigrants in detention than on citizens in

detention. *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991); *see also Mathews v. Diaz,* 426 U.S. 67, 80 (1891). Additionally, any telephone access in detention conditions is "subject to rational limitations in the face of legitimate security interests of the . . . institution." *Hutchings,* 501 F. Supp. at 1296 (citing *Bell v. Wolfish,* 441 U.S. 520, 522 (1979)). If the limitations on access are reasonable, there is no First Amendment violation. *Galli,* 596 F. Supp.135 at 138 (D. Nev. 1984).

While true that some courts have recognized detainees' First Amendment right to telephone access when access has been denied, this case is not about a denial of telephone access, and therefore the First Amendment is not implicated. Neither FFI nor detained immigrants have ever been denied telephone access. FFI attempts to mislead the Court by alleging that its number was "shut down." Mot. at 26. But, to the contrary, FFI's number has never been shut down; FOMDD's extension number was removed from the pro bono platform. Decl. Ex A, ¶ 19, 23. FFI acknowledges that detained immigrants have continued to make calls to its hotline, well after FOMDD's extension number was removed from the pro bono platform. Mot. at 18-19. Indeed, FFI's hotline number and ability to communicate with individuals in detention has remained untouched. Decl. Ex A, ¶ 23. Furthermore, detained immigrants remain able to make free and unmonitored calls to legal services, courts, embassies, resource help lines, and emergency lines. *Id*. ¶ 8, 10-11. That personal phone calls between FFI and detained immigrants must abide by ICE's telephone rules in no way implicates the First Amendment.

Importantly, the removal of an extension number that is due to content-neutral reasons does not violate the First Amendment rights of detainees. *See Turner v. Safley,* 482 U.S. 78, 79, 89–90 (1987) (finding that a content neutral regulation does not unconstitutionally abridge the First Amendment rights of individuals in detention). Here, Defendants provide two legitimate and content-neutral reasons for removing FFI's extension number: not only was FOMDD ineligible for the

approved pro bono List, but FOMDD was also facilitating prohibited three-way calls. The removal of FOMDD's extension number from the pro bono platform is unrelated to the content and viewpoints expressed on the phone calls between detained immigrants and FFI.

Even under an attorney-client relationship, which does not exist between FFI or FOMDD and detained immigrants because neither organization provides legal services, communication with detained clients, either in person or telephonic, is a right that is "subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." *See Bell*, 441 U.S. at 550-51. If the limitations on access are reasonable, there is no First Amendment violation. *See Strandberg*, 791 F.2d at 747 (citing *Galli*, 596 F. Supp. at 138). Plaintiffs cite no legal authority that establishes a right to unmonitored attorney-client meetings or communications, let alone unmonitored communications between non-attorneys and detained individuals. *See McGinnis v. County of Fresno*, No. CV-F-08-542, 2008 WL 4348000, at *9-*10 (E.D. Cal. Sept. 22, 2008). The fact of confinement as well as the legitimate goals and policies of the institution limit the detainees' retained constitutional rights. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . pretrial detainees." *Bell*, 441 U.S. at 546.

Here, Defendants gave consistently clear reasons for the removal of FOMDD's extension number from the pro bono platform. Decl. Ex A, ¶ 19. FFI fails to allege that the removal of FOMDD's extension number from the pro bono platform was irrational or otherwise entirely precluded FFI from communications with detained individuals. Thus, this claim is unlikely to succeed on the merits and FFI's motion for preliminary injunction should be denied.

### 1. FFI has no right to association.

FFI argues that Defendants' removal of FOMDD's extension number from the pro bono platform interferes with FFI's association with detained immigrants.

12

Mot. at 29. FFI cites one case about college organizations' right to association, *Healy v. James*, 408 U.S. 169, 181-82 (1972) (discussing the associational rights of college organizations denied official recognition on campus), and two cases about legal nonprofits' right to association. *In re Primus*, 436 U.S. 412, 432 (1978) (discussing the rights of a nonprofit organization to associate by engaging in litigant solicitation); *Nw. Immigrant Rights Project v. Sessions*, No. C17-716 RAJ, 2017 WL 3189032, at *3-4 (W.D. Wash. July 27, 2017) (discussing the associational rights of nonprofits "whose primary purpose[ is] the rendition of legal services" (internal quotations and citations omitted)). FFI fits into neither of these categories. FFI is not an organization approved for a pro bono extension number, does not have active members, and does not provide any legal services. *See* Mot. at 30. Thus, FFI has no right to association and its First Amendment right to association claim is unlikely to succeed on the merits.

## 2. The removal of FOMDD's extension number from the pro bono platform does not require strict scrutiny

Because Defendants did not remove FOMDD's extension number from the pro bono platform based on the content of the phone calls or views expressed, Defendants' act is not subject to First Amendment strict scrutiny. *See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,* 502 U.S. 105, 118 (1991) (applying strict scrutiny to "content-based financial disincentives on speech); *see also Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011) (both applying strict scrutiny to laws or regulations that disfavor speech based on content). Here, Defendants actions are unrelated to the content of any speech. Thus, Defendants need not show that its action was necessary to serve a compelling state interest and is narrowly drawn to achieve that end.

Alternatively, if the court were to find that some type of scrutiny applied, Defendants have provided several compelling reasons for removing FOMDD's

extension number from the pro bono platform and the removal of the extension number is narrowly tailored to protect detention center security and the integrity of the DTS system. *See supra* Section I(B), *infra* Section I(C).

### C.   FFI fails to state a First Amendment retaliation claim and cannot meet the factors of the retaliation claim test.

FFI would not succeed on its First Amendment retaliation claim. FFI alleges that Defendants took "adverse actions against FFI, namely geographically restricting and then shutting down FFI's hotline" and that these actions were "motivated by [Defendants'] desire to retaliate against FFI for its public criticism of Defendants. Compl. ¶¶ 45-46. But FFI cannot show that Defendants took adverse action against FFI, that Defendants' action would cause a chilling effect, or that Defendants did not have legitimate reasons for their action. Thus, FFI is unlikely to succeed on the merits of its retaliation claim.

To prevail on a First Amendment retaliation claim , against the backdrop of a detention setting, FFI must show: 1) "that the retaliated-against conduct is protected," 2) "defendant took adverse action against the plaintiff," 3) "a causal connection between the adverse action and the protected conduct," 4) "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities," and 5) "that . . . retaliatory action did not advance legitimate goals of the . . . institution." *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). The fifth element may only be satisfied with an additional showing that "the defendant's actions were arbitrary and capricious . . . or that they were 'unnecessary to the maintenance of order in the institution." *Id.*

First, FFI must show that the retaliated-against conduct is protected. *Id.* Written expression is protected under the First Amendment if "[a]n intent to convey a particularized message [is] present, and . . . the likelihood [is] great that the message w[ill] be understood by those who view [ ] it," *Spence v. State of Wash.*, 418 U.S. 405, 409-11 (1974). However, even protected expression is

14

subject to limitations. *See United States v. Stevens,* 559 U.S. 460, 130 (2010) (noting that some types of expression are not protected by the First Amendment). To the extent that FFI alleges that it publicized "instances of abuse and mistreatment in the press," and assuming FFI's conduct falls within the category of conduct protected by the First Amendment, Defendants acknowledge that FFI may have engaged in protected conduct. *See* Mot. at 20.

Second, FFI must show that Defendants took adverse action against FFI. *Watison*, 668 F.3d at 1114. FFI deceptively asserts that Defendants "cut off access to the free and confidential hotline." Mot. at 19. However, Defendants never disconnected FFI's hotline. To the contrary, FFI acknowledges that detained immigrants maintain access to the hotline's main number and have even continued calling FFI's hotline after the removal of the extension number. Mot at 26-27. If any adverse action was taken, it was against FOMDD, the only organization approved for the pro bono extension number. It is impossible for Defendants to have taken adverse action against FFI by removing the extension number from the pro bono platform if the extension number was associated with a wholly different organization, FOMDD.

Third, FFI must establish "a causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. Even if the Court found that FFI engaged in protected conduct, FFI's retaliation claim fails because it cannot establish nexus. Causation in the First Amendment retaliation context is but-for causation; meaning, but for the protected conduct, the challenged retaliatory action "would [not] have been taken." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To satisfy this element, FFI must show that but for FFI's public criticism of ICE, ICE would not have removed FOMDD's free and unmonitored extension number.

The removal of FOMDD's extension number from the pro bono platform had nothing to do with FFI's public criticism of ICE. FFI alleges, "Defendants shut down the hotline immediately after *OITNB* publicized FFI's work and FFI spoke

out critically about immigration detention through national media outlets." Compl. ¶ 46. However, Defendants' declaration and FFI's own exhibits bluntly cut against FFI's causation argument. Defendants provide a detailed overview of the process by which Talton Communications removed FOMDD's extension number. *See generally* Decl. Ex. A. In a two-phase process, Defendants evaluated the pro bono platform and removed organizations that either violated telephone policy or were not on the approved pro bono list. Decl. Ex. A, ¶ 19. This standardization process had nothing to do with FFI's public criticism of ICE and in no way shows a retaliatory response to FFI's conduct. The two reasons why ICE removed FOMDD's extension number are that FOMDD failed to follow telephone policy by allowing three-way calls and call forwarding, and FOMDD was not on the approved EOIR pro bono list. *Id.*

Nor can FFI show causation through the proximity of time between the airing of *OITNB* and Defendants actions. Along with Defendants provided explanation for the removal of FOMDD's extension number, emails dating back to November 2018, well before the *OITNB* airing in July 2019, show that FOMDD's extension number was removed from facilities located outside FOMDD's service area after a recently completed "pro bono system audit." *See* Pl's Mot. Ex. 2, ECF 4-10. This email further advances that the purpose of the pro bono system audit was to "assure that each facility is served by the pro bono numbers related to that system" and because FOMDD'S extension number was granted based on FOMDD's status as a nonprofit servicing the Miami, Florida area, FOMDD's extension number was removed from all facilities outside of the Miami area. *Id.* FFI acknowledges that FOMDD's extension number remained intact in Florida, only confirming that the extension number was granted to FOMDD based on its locality. Mot. at 23. Another email, also provided by FFI, confirms that as of December 4, 2018, FOMDD's extension number was actually added to an additional facility in Florida. *See* Pl's Mot. Ex. 3, ECF 4-11. Thus, there is no correlation between FFI's activities and the

removal of FOMDD's extension number, and Defendants were not retaliating against FFI by restricting FOMDD's extension number.

Likewise, FFI's attempt to show causation by establishing a pattern and history of retaliation, fails. FFI alleges that ICE interfered or suspending its in-person visitation programs at detention facilities starting from 2013. Mot. at 10, 14-15. Visitation rights are not at issue in this litigation.

Importantly, FFI itself provides additional evidence detailing other legitimate causes for the removal of FOMDD's extension number from the pro bono platform. In an email from ICE Detainee Telephone Service (DTS), Talton Communications clarifies that DTS, not ICE, removed FOMDD's extension number because FOMDD was not on the approved pro bono List. Pl's Mot. Ex. 4, ECF 4-12. FFI was never on the approved pro bono list either. Furthermore, FFI provides an article describing how "detainees are still able to contact [FFI,] though the hotline was removed from an ICE-approved list of free legal service providers for violating regulations." Pl's Mot. Ex. 5, ECF 4-6. Here, FFI acknowledges that ICE removed FOMDD's extension number because it noticed three-way calls associated with the extension line, a strictly prohibited activity. *Id.* Thus, FFI itself has provided several reasons, independent from its public criticism of ICE and the airing of *OITNB*, for the removal of FOMDD's extension number from the pro bono platform.

As to the fourth and fifth factors, FFI must show that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities," and "that . . .[the] retaliatory action did not advance legitimate goals of the . . . institution." *Watison*, 668 F.3d at 1114. The test for determining whether the alleged retaliatory conduct chills free speech is "generic and objective" and based on an "ordinary [person] . . . in the plaintiffs' position." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). Other courts have found that a detention facility's monitoring and recording of phone calls does not violate any First Amendment rights. *Clemons*, 2013 WL 3489870, at *3. Here, Defendants removed FOMDD's

extension number because FOMDD's extension line was unapproved and those using FOMDD's extension number were breaking pro bono telephone access protocol. This act would not chill the ordinary person from publicly criticizing ICE because any ordinary organization would understand the importance of following a detention center's pro bono access procedures, especially given that phone lines in detention facilities are subject to fees and security limitations to advance legitimate goals of the institution and to maintain order in the detention center.

Congress charged ICE with enforcing immigration laws and detaining immigrants, when necessary, as an enforcement mechanism. ICE has a duty to maintain order in detention centers and to protect detained immigrants. ICE's prohibition of three-way calls and call forwarding stems from the legitimate goal of maintaining order and protecting detainees. ICE has consistently stated that allowing three-way calls and call forwarding makes it possible for a detainee to have his call transferred to someone that may assist him in his criminal activities, aid him in an escape, intimidate witnesses against him, harass victims, order the delivery of contraband, continue a criminal enterprise, or further any inappropriate activity. Decl. Ex. A, ¶ 12. Similarly, allowing third party calling may present dangers for detainees as they may get calls intimidating them. *Id*. Thus, Defendants' removal of FOMDD's extension number from the pro bono platform should not be seen as so discouraging as to satisfy this factor because removing FOMDD's extension number was in furtherance of legitimate goals of the detention facilities. Accordingly, the Court should find that FFI fails to state a First Amendment retaliation claim.

## II.    FFI Fails to Establish Irreparable Harm and Fails to Demonstrate That the Balance of Equities and the Public Interest Weigh in its Favor

To fulfill the "irreparable harm" requirement, the moving party "must do more than merely allege imminent harm," but "must demonstrate immediate threatened injury." *Associated Gen. Contractors of California, Inc. v. Coal. for*

1   *Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). Delay in seeking relief may

2   undercut the possibility of irreparable harm. *Lydo Enters., Inc. v. City of Las Vegas*,

3   745 F.2d 1211, 1213 (9th Cir. 1984) (citation omitted) ("[a] preliminary injunction

4   is sought upon the theory that there is an urgent need for speedy action to protect

5   the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of

6   need for speedy action . . . . "); *Isomedia, Inc. v. Spectrum Direct, Inc*., No. C08-

7   1733JLR, 2009 WL 10676393, at *4 (W.D. Wash. July 1, 2009) (three month

8   delay), citing *Valeo Intellectual Prop., Inc. v. Data Depth Corp*., 368 F. Supp. 2d

9   1121, 1128 (W.D. Wash. 2005) (four month delay); *but see Bundy Am., LLC v.*

10  *Hawkeye Transportation*, No. C09-817Z, 2009 WL 10676371, at *6–7 (W.D.

11  Wash. Dec. 1, 2009) (finding ten-month delay to be reasonable under the

12  circumstances involving breach of covenant not to compete).

13       That FFI waited more than one year since the removal of FOMDD's

14  extension number to bring this motion undercuts its ability to demonstrate that it

15  faces an immediate threat or injury that must be addressed by this Court before the

16  merits are decided. *Lydo Enters., Inc*., 745 F.2d at 1213. FFI provides no viable

17  explanation for this delay, nor are the injuries that FFI alleges sufficient to justify a

18  preliminary injunction. Because FFI has incurred numerous of the irreparable

19  injuries it alleges for over the past year and has specifically not sought injunctive

20  relief, FFI can no longer establish the immediacy of the injuries that it alleges and

21  any relief that FFI obtains should only come after a ruling on the merits. Defendants

22  removed FOMDD's extension number from the pro bono platform in all AORs

23  outside of FOMDD's locality more than a year ago, in November of 2018. And

24  FOMDD's extension number was removed from the pro bono platform in Florida

25  four months ago, in August of 2019. Clearly, the harm was not severe enough to

26  spur FFI's immediate lawsuit.

27       Additionally, FFI fails to show that detained immigrants will face harm if

28  unable to use the FOMDD extension number to file complaints about ICE. Mot. at

19

32. Detained immigrants have several other viable ways to report abuse via free and confidential phone calls. Detained immigrants may call OIG, DRIL, CRCL, CHD, or UNHCR to report abuse, make complaints about detention center conditions, or find resources. Decl. Ex. A, at 8, 10-11. Thus, FFI has failed to demonstrate irreparable harm and its motion for preliminary injunction should be denied.

The balance of equities and public interest favors Defendants because, as explained above, Defendants removed FOMDD's extension number from the pro bono platform to preserve the dignity of the DTS, ensure the safety of detainees, and maintain order in detention facilities. *See Bell*, 441 U.S. at 546, 550-51 (communication with detainees is subject to rational limitations when the government facility has legitimate security interests such as maintaining institutional security and preserving internal order).

## III.   The Court Should Not Grant a Nationwide Injunction

Were the Court to order a preliminary injunction here, it should be limited to redressing only any established injuries to Plaintiffs. Under Article III, a plaintiff must "demonstrate standing . . . for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."). Equitable principles likewise require that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Accordingly, the Ninth Circuit has repeatedly vacated or stayed the nationwide scope of injunctions, including in a challenge to a federal immigration rule. *See, e.g.*, *East Bay Sanctuary Covenant v. Barr*, No. 19-16487, 2019 WL 3850928, at *2 (9th Cir. Aug. 16, 2019); *see also California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (collecting cases). Here, to the extent that the actual interested party FOMDD, not FFI, is based on the Southern District of Florida, and the most recent actions

20

that FFI complains of are limited to the State of Florida, an injunctive relief should be accordingly limited in scope. FFI has not established standing or that nationwide relief is necessary to remedy the alleged harms. Thus, the court should deny FFI's motion for preliminary injunction.

## CONCLUSION

This Court should deny Plaintiff's application for preliminary injunction because Plaintiff is not likely to succeed on the merits of its claims, fails to establish irreparable harm, and the remaining equitable factors require denial of Plaintiff's Motion

Dated: January 8, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
SAMUEL GO
Assistant Director
OZLEM BARNARD
ANNA DICHTER
Trial Attorneys

By: */s/ Ozlem Barnard*
OZLEM BARNARD (NY 4350583)
District Court Section
Office of Immigration Litigation
United States Department of Justice
Tel: (202) 307-4469
Fax: (202) 305-7000
ozlem.b.barnard@usdoj.gov

By: */s/ Anna Dichter*
ANNA DICHTER (NJ 304442019)
District Court Section
Office of Immigration Litigation
Washington, D.C. 20044
Tel: (202) 353-2405
Fax: (202) 305-7038
Anna.l.dichter@usdoj.gov

*Attorneys for the Defendants-Respondents*