**HUESTON HENNIGAN LLP**
Moez M. Kaba, State Bar No. 257456
*mkaba@hueston.com*
Rajan S. Trehan, State Bar No. 302242
*rtrehan@hueston.com*
Ashley Artmann, State Bar No. 319374
*aartmann@hueston.com*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FOR IMMIGRANTS,<br><br>      *Plaintiff,*<br><br>    vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>      *Defendants.* | Case No. CV 19-10424-AB (GJSx)<br><br>**OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR LEAVE TO FILE SUR-REPLY**<br><br>*[Filed concurrently with Declaration of Christina Fialho in Support of Opposition to Defendants' Ex Parte Application]* |

## **INTRODUCTION**

*Less than 36 hours* before the hearing on Freedom for Immigrant's ("FFI") Application for Preliminary Injunction ("Application"), and *three weeks* after Defendants filed their Opposition to FFI's Application, Defendants filed an *ex parte* application seeking to file an untimely sur-reply in order to reshape the record. Despite the fact that FFI has now submitted multiple sworn declarations and evidence clearly establishing that it and its affiliate, FOMDD, jointly requested the Hotline at the heart of its Complaint, Defendants now seek to present snippets of information to suggest that the request was made by FOMDD alone or that ICE only recorded it as such.  Defendants' *ex parte* application should be rejected both because it fails the standard set forth in *Mission Power Eng'g Co. v. Cont'l Cas. Co.* ("*Mission Power*"), 883 F. Supp. 488 (C.D. Cal. 1995), and because the so-called sur-reply they seek to file does not accurately reflect the facts or provide any information relevant to the issue of standing.

## **ARGUMENT**

"*Ex parte* applications are solely for extraordinary relief and are rarely granted." *George v. Kasaine*, 17-cv-02863-AN (MRWx), 2015 WL 12850543 at *2 (C.D. Cal. May 5, 2015) (Birotte, J.). "Such applications are 'inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system.'" *Id.* (quoting *Mission Power*, 883 F. Supp. at 490).  Accordingly, courts in this District only grant *ex parte* relief where a movant shows two things: first, that his cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and second, that he is without fault in creating the crisis that requires *ex parte* relief (or that the crisis occurred as excusable neglect). *Id.* Defendants' application for *ex parte* relief does not even cite (much less apply) the Central District's *Mission Power* standard and should be dismissed on that basis alone. *See* Dkt. No. 24 ("*Ex Parte* App."); *see also Classical Silk, Inc. v. Dolan Grp., Inc.*, 14-cv-09224-AB (MRWx), 2016 WL 7637668 at *2 (C.D. Cal. Mar. 1, 2016) (Birotte,

1   J.) (denying *ex parte* application where defendants "[did] not even try to make [] a
2   showing" under the *Mission Power* standard). But even if Defendants had addressed
3   the *Mission Power* standard in their application, their request fails under both prongs.

4   **I.      Defendants Will Suffer No Irreparable Prejudice**

5          As an initial matter, Defendants make no attempt to identify any irreparable
6   prejudice they will suffer if the underlying motion is not heard *ex parte.*  Nor can
7   Defendants make such a showing because the underlying merits of the *ex parte*
8   request are meritless, thus "failure to hear it cannot be prejudicial." *Mission Power*,
9   883 F. Supp. at 492.  Defendants cannot demonstrate irreparable prejudice because
10  (1) Defendants' "new" evidence does not prove the propositions they assert, and (2)
11  their evidence does not controvert the facts that FFI has already submitted in support
12  of its standing, which easily suffice to establish standing at this preliminary stage.

13         *First*, Defendants now seek to file a sur-reply for the sole purpose of
14  submitting "new" evidence: (1) a 2013 email chain relating to ICE's efforts to
15  activate the Hotline and (2) a listing of extension numbers accessible at a single
16  detention facility in 2017 and 2020.  Neither is new and neither establishes that FFI
17  did not jointly seek and operate the Hotline with its affiliate FOMDD.

18         Defendants argue that a single chain of emails starting on October 23, 2013,
19  "refut[es] [the] claim that FFI and FOMDD applied jointly," *Ex Parte* App. at 2, and
20  shows that "FOMDD held itself out as an independent organization," Dkt. No. 24-3
21  ("Sur-Reply") at 2.  But the initial email in the chain, from Bud Conlin of FOMDD,[1]
22  makes explicit reference to a *preexisting* "request to be on the pro bono telephone
23  platform at the Krome Service Processing Center."  *Id.*, Ex. 1 at 11.  That preexisting
24  request, which Defendants conveniently do not submit to the Court but is attached to

---

26  [1] "Bud" is the nickname of FOMDD's co-founder and co-coordinator, Francis L.
27  Conlin, who submitted a declaration in connection with FFI's Reply.  That
    declaration attested that "FFI and FOMDD jointly requested the extension," and "the
    hotline has always been operated and supervised by FFI and staffed by FFI
28  volunteers, including members of FOMDD."  Declaration of Francis L. Conlin
    ("FOMDD Decl.") (Dkt. No. 23-1) ¶ 7.

1  this filing, was sent to ICE on August 5, 2013, and it clearly indicates FFI's
2  involvement in seeking the Hotline.  *See* Declaration of Christina Fialho In Support
3  of Opposition to Defendants' *Ex Parte* ("FFI *Ex Parte* Decl.") ¶ 3, Ex. 1 at 6
4  (proposing "establishment of an ICE Pro Bono Telephone extension").

5       As has now been attested to in two sworn declarations, the request letter was
6  sent jointly on behalf of FFI[2] and FOMDD.  FFI *Ex Parte* Decl. ¶ 3, Ex. 1 at 4 ("*We*
7  *are writing to request your approval of a visitation service for ICE detainees . . . .*")
8  (emphasis added); *see also* FFI Decl. ¶ 6; FOMDD Decl. ¶¶ 5-7.  Christina Fialho,
9  *FFI's* Co-Founder and Co-Executive Director, drafted the letter and was its first-
10 listed signatory.  FFI *Ex Parte* Decl. ¶ 3, Ex. 1 at 5.  FFI and FOMDD's letter also
11 specifies that any questions about the requests (for the visitation program and the
12 Hotline) should be first directed to Ms. Fialho at FFI.  *Id.*, Ex. 1 at 4.

13      Not only does the original request clearly establish its joint nature, it makes
14 clear that FOMDD is an FFI affiliate, just as Mr. Conlin affirmed it always has been.
15 *See* FOMDD Decl. ¶ 7.  The letter discusses the visitation program FOMDD wanted
16 to provide "in conjunction with" FFI, and the proposal notes that "[o]ver 25
17 visitation services have been started around the country with [FFI's] support."  FFI
18 *Ex Parte* Decl. ¶ 3, Ex. 1 at 6.  Indeed, on September 16, 2013, more than a month
19 prior to the email chain Defendants now submit, then-Florida Congressman Joe
20 Garcia wrote to ICE Assistant Director John Stevenson to support FOMDD and
21 FFI's efforts.  *Id*. ¶ 4, Ex. 2.  Congressman Garcia's letter described FOMDD's
22 relationship with FFI as "an outreach program . . . in cooperation with a national
23 group, Community Initiative for Visiting Immigrants in Confinement (CIVIC)."  *Id.*
24 That ICE may have failed to note this when it handled the request is no fault of FFI's
25 nor should it act as a bar to FFI's claims.

26
27
---
28 [2] As noted previously, FFI was then known as CIVIC.  *See* Declaration of Christina
Fialho ("FFI Decl.") (Dkt. No. 4-8) ¶ 4.

1    Defendants also seek to submit two lists which they claim show that (1) FFI

2 was "never listed as an approved organization on ICE's pro bono lists," (2)

3 "FOMDD was only listed on the Krome ICE pro bono list in 2017," and (3) "several

4 other organizations were removed after 2017 from the Krome ICE pro bono list."[3]

5 Dkt. 24-3 at 2.  The lists establish none of these things.  Oddly, Defendants do not

6 submit a declaration to authenticate the lists or to provide any foundational

7 information about their creation, purpose, or use.  In any event, it is hard to imagine

8 how Defendants believe that a list from a single detention facility could demonstrate

9 that FFI was never granted an extension on ICE's national platform or even that

10 FOMDD was only listed in 2017.  If Defendants now claim that the Hotline

11 extension was only operational at a single facility, they directly contradict ICE and

12 its declaration in support of the Opposition.  Declaration of Tae D. Johnson ("ICE

13 Decl.") (Dkt. No. 22-1) ¶ 15 ("[T]he extension to any organization on the pro bono

14 platform was accessible by any detainee nationwide.").  Moreover, as already stated,

15 ICE fails to demonstrate how its own errors in recordkeeping permit it to escape

16 FFI's claims.[4]

17    *Second*, even if the Court accepted Defendants' incomplete, cherry-picked,

18 and belated documents, that would have no impact on the straight-forward and well-

19 established standing inquiry.  A plaintiff must allege it suffered "an injury in fact,"

20

21

22 [3] It is hardly surprising that neither FFI nor FOMDD are included on the 2020 list—
FFI clearly alleges that Defendants had unconstitutionally shut down the Hotline by
that point.  However, it is telling that even though other organizations apparently

23 "were removed after 2017," ICE did not remove FFI from the platform until August
2019, when it decided to retaliate after the release of the new season of *Orange is the*

24 *New Black*.  *See* FFI Decl. ¶ 26.

25 [4] There is good reason to suspect the accuracy of ICE's recordkeeping and lists.  The
Government Accountability Office ("GAO") found "systemic problems with the pro

26 bono calling system," including that a "list of consulate numbers was 6 years old"
and "9 of the numbers were incorrect."  *See* GAO, *Alien Detention Standards:*

27 *Telephone Access Problems Were Pervasive at Detention Facilities; Other*
*Deficiencies Did Not Show a Pattern of Noncompliance* (July 6, 2007),

28 https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-
875/html/GAOREPORTS-GAO-07-875.htm.

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION

causally connected to "the conduct complained of," that is likely to "be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). FFI has more than adequately established its standing to seek the requested preliminary injunction based on allegations in its Complaint and declarations filed in support of its Application. *See City & Cty. of San Francisco v. USCIS*, 944 F.3d 773, 787 (9th Cir. 2019).

FFI has adequately demonstrated its standing through organizational affirmations of harm showing (1) frustration of its mission and (2) diversion of its resources. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). Defendants do not now dispute—and have never disputed that—that FFI operated the Hotline for years (with ICE's knowledge) and used it as a critical means of documenting abuse in immigration detention facilities. *See* FFI Decl. ¶¶ 9, 11, 28-30; Application for Preliminary Injunction at 32-33.

From the origin of the Hotline to the Hotline shutdown, Defendants have been on notice that FFI was operating the Hotline. As detailed above, there is ample evidence that FFI and FOMDD jointly requested and were granted the Hotline extension. Moreover, FFI corresponded directly with and was copied on correspondence with ICE regarding the Hotline. *See* FFI Decl. ¶¶ 23, 27, Exs. 3, 6. FFI and FOMDD jointly attempted to have ICE reinstate the nationwide scope of the Hotline after the 2018 restriction. Christina Fialho, the Co-Executive Director and Co-Founder of FFI was copied on an email regarding the reinstatement sent from Bud Conlin to Peter Meitzner at ICE. FFI *Ex Parte* Decl. ¶ 5, Ex. 3 at 9. This email states, "Our extension was given to us and our national partner Freedom for Immigrants (cc-ed here) with the understanding that it would be a national extension." *Id*. When Peter Meitzner responded, he did nothing to correct or contest the assertion that the Hotline extension had been granted to FFI and FOMDD. *Id*. at 8. When Julie Plavsic later wrote to inform Mr. Conlin that the Hotline had been reinstated at an additional facility in Florida, she copied Christina Fialho—another

1  email that FFI provided in support of its Application for Preliminary Injunction.  *See*
2  FFI Decl., Ex. 3.

3       When Defendants shut down the Hotline in August 2019, FFI sent ICE a
4  cease-and-desist letter demanding reinstatement.  *See* FFI Decl. ¶ 27, Ex. 5.  And
5  when Felicia Johnson at ICE responded thereto, she did nothing to correct or contest
6  FFI's claim to the Hotline.  *Id*. Ex. 6.  When FFI made the Hotline shutdown public,
7  ICE made no mention of FFI's supposed lack of access to the platform when it issued
8  multiple statements to the press regarding FFI's Hotline shutdown.  *See* Declaration
9  of Moez M. Kaba (Dkt. No. 4-1) ¶¶ 5-6, Exs. 5-6.  And after this lawsuit was filed,
10 ICE again made no mention of FFI's supposed lack of access to the platform when it
11 made public comments about the lawsuit's allegations.  Rather, ICE expressly stated
12 that FFI was removed from the pro bono platform for "misusing the hotline."[5]  Even
13 now, in opposing FFI's Application, ICE has not disclaimed knowledge of the fact
14 that FFI was administering the Hotline.[6]

15      In truth, Defendants were fully aware of who they were targeting when they
16 suppressed and burdened FFI's speech in retaliation for protected First Amendment
17 activity (those are cognizable injuries).  But even if one were to accept Defendants'
18 baseless assertions that they did not know of FFI's formative role in creating the
19 Hotline, that would not mean that FFI was not injured by the Hotline shutdown nor
20 would it mean that FFI's injury could not be redressed by reinstatement of the
21 Hotline.  Again, there can be no real dispute that returning the parties back to the
22
23 ───────────────

24 [5] *See Immigrant advocates sue US over yanked detention hotline*, AP News (December 10, 2019) https://apnews.com/419ed1b629cde69d5d393a54c8e2c289; *see also Immigrant Advocates Sue Trump Administration in L.A. Court Over Yanked*
25 *Detention Hotline*, KTLA 5 (December 10, 2019) https://ktla.com/2019/12/10/immigrant-advocates-sue-trump-administration-in-l-a-
26 court-over-yanked-detention-hotline/.

27 [6] The emails submitted with Defendants' Sur-Reply indicate that ICE and/or its phone provider knew that the Hotline was being operated by someone other than
28 FOMDD as early as December 2013.  *See* Sur-Reply, Ex. 1 at 1; *see also* ICE Decl. ¶ 13.

1  position that they had been in since the Hotline extension was granted in 2013 would
2  redress FFI's injury.

3      Because Defendants' proposed sur-reply does not alter the Court's analysis of
4  FFI's standing in connection with its Application for Preliminary Injunction, there is
5  no risk of "irreparable prejudice" and no good cause for granting Defendants' *ex
6  parte* application. *See Urena v. Earthgrains Distrib., LLC*, 16-cv-000634-
7  CJC(DFMx), 2017 WL 4786106, at *11 n. 4 (C.D. Cal. July 19, 2017) (denying *ex
8  parte* application to file sur-reply where party did not make a showing of good
9  cause); *see also Great Am. Ins. Co. v. Berl*, 17-cv-03767 SJO, 2017 WL 8180627 at
10  *1 ("to allow [] sur-replies as a regular practice would put the court in the position of
11  refereeing an endless volley of briefs" (*quoting Fedrick v. Mercedes-Benz USA, LLC*,
12  366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).

13  **II.    Defendants Are Not Without Fault**

14      "To determine whether the moving party is without fault or guilty of only
15  excusable neglect, '[i]t is the creation of the crisis—the necessity for bypassing
16  regular motion procedures—that requires explanation.'" *George*, 2015 WL
17  12850543, at *4 (quoting *Mission Power*, 883 F. Supp. at 493); *In re Intermagnetics
18  Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) ("Ex parte applications are not
19  intended to save the day for parties who have failed to present requests when they
20  should have . . . ."). "A party's last-minute desire to supplement its [briefing] . . . is
21  not sufficient to justify *ex parte* relief . . . ." *Samsung SDI Co. v. Matsushita Elec.
22  Indus. Co.*, No. 05-8493 PA (SHX), 2006 WL 5097404, at *1 (C.D. Cal. June 15,
23  2006).

24      Defendants' "crisis" is entirely of their own making. They requested and
25  received two extensions of the deadline to file their Opposition to FFI's Application
26  for Preliminary Injunction. *See* Dkt. Nos. 15, 20. When they ultimately filed their
27  Opposition, Defendants raised a standing argument based on the "assignment" of the
28  Hotline but failed to present any records regarding the initial request for, and

1  approval of, the Hotline.  Even now, 21 days after filing their Opposition (and 47
2  days after being served with FFI's Complaint and Application), Defendants only
3  present a smattering of incomplete and irrelevant records.

4      Defendants cannot justify their delay.  Counsel asserts that they were "only
5  advised of and provided the above-referenced documents yesterday and earlier
6  today," but Defendants supply no reason for why Defendants could not obtain this
7  evidence sooner or what efforts were undertaken to do so.  Dkt. No. 24-1 ¶ 11.
8  Given that Defendants raised standing in the first instance, they can hardly assert that
9  this late filing is necessitated by surprise.  Accordingly, Defendants have provided
10  the Court no reason to find them without fault or guilty of only excusable neglect in
11  producing "new" evidence now.

12      In reality, Defendants have known for years that FFI requested and operated
13  the Hotline, Defendants' new records do nothing to alter the Court's standing
14  analysis, and Defendants offer no legitimate excuse for their failure to timely submit
15  the arguments they now seek to make.  The desire to "have the last word on [this]
16  issue" does not justify Defendants' extraordinary request.  *Int'l Inst. Of Mgmt. v.*
17  *Org. for Econ. Cooperation and Dev.*, No. 2:18-CV-1748 JCM (GWF), 2019 WL
18  1299347, at *1 (D. Nev. Mar. 21, 2019).  FFI respectfully requests that the *ex parte*
19  application be denied.

20  Dated:  January 30, 2020              HUESTON HENNIGAN LLP
21
22
23                                        By:  /s/ Moez M. Kaba
                                              Moez M. Kaba
24                                            Rajan S. Trehan
                                              Ashley M. Artmann
25                                            *Attorneys for Plaintiff Freedom for*
                                              *Immigrants*
26
27
28